IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL J. and CHERILYNN RUDDY     :
        Plaintiffs              : No. 3:09-CV-1984
                                   :
        v.                    : (JUDGE CAPUTO)
                                   : (MAGISTRATE JUDGE PRINCE)
U.S. POSTAL SERVICE, ET AL.,     :
        Defendants            :

## REPORT AND RECOMMENDATION

**I. Procedural Background**

Pursuant to an Order entered on November 9, 2010 (Doc. 50), the

Honorable A. Richard Caputo referred the Defendants' pending Motion to Dismiss

and for Summary Judgment to the undersigned for the purpose of preparing a

Report and Recommendation.

Plaintiffs Michael J. Ruddy and Cherilynn Ruddy, husband and wife,

initiated this action on October 13, 2009 (Doc. 1) and thereafter filed an amended

complaint on March 10, 2010 asserting claims including, *inter alia*., disability and

age discrimination; a hostile work environment; and constructive discharge with

respect to Plaintiff Michael Ruddy in connection with his employment by the U.S.

Postal Service.  (Doc. 15).  Specifically, the amended complaint alleges violations

of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, along with additional claims of, *inter alia*, conspiracy, intentional infliction of emotional distress ("IIED"), loss of consortium and libel and slander.  Named as Defendants are the United States of America ("USA"); the United States Postal Service ("USPS"); United States Postmaster General John E. Potter; Linda Shall, Brian Tuck, Christopher Pugliese, Lisa Bansa, Diane Passarelli and Rick Dickson, all employed as supervisors of the USPS Office–Scranton GMF; and Holly Shope, a USPS manager.

On March 24, 2010, Defendants filed a Motion to Dismiss and for Summary Judgment (Doc. 26), and thereafter filed a Brief in Support (Doc. 29) and Statement of Material Facts (Doc. 30) on April 7, 2010.  After being granted four (4) extensions of time, Plaintiffs filed a Brief in Opposition to the Motion on August 5, 2010 (Doc. 48), to which Defendants filed a Reply on August 20, 2010 (Doc. 49).  The matter is now ripe for disposition.  For the reasons that follow, it will be recommended that the Defendants' Motion to Dismiss be granted in part

and denied in part.[1]

## II. Factual Background

Plaintiff, Michael J. Ruddy, was born on January 27, 1955 and was employed by the USPS. Combined with his time in the military, he avers that he was second in seniority at the USPS-Scranton, having 34 years of service. According to the allegations of the complaint, Plaintiff maintains that he was singled out and discriminated against because of his age and perceived and/or actual disability, which created a hostile work environment through threats and intimidation. On March 18, 2009, Plaintiff asserts he was told by Passarelli that he would have to work undertime on a job for one hour. Plaintiff responded that it was not possible and requested to speak with a union steward. Shortly thereafter, in a meeting with Passarelli, Shall, Tucker and an unidentified female supervisor, Plaintiff alleges he began to develop chest pains, feelings of panic and trouble breathing. He then called his wife, who in turn called his physician, who directed Plaintiff to go to the hospital.

---

[1] By Order dated June 9, 2010, Judge Caputo denied a request by Plaintiffs to continue the Motion in its entirety until the completion of discovery but agreed that consideration of any request for summary judgment was premature. Accordingly, it declined to consider any arguments in the Defendants' Motion requesting summary judgment. (Doc. 39). Consequently, this Report and Recommendation will address only those arguments in the present Motion seeking dismissal, consistent with the court's June 9, 2010 Order.

On June 29, 2009, Plaintiff filed a claim with the U.S. Department of Workers' Compensation ("OWCP"), which was challenged by Defendants. Plaintiff alleges he was on leave without pay ("LWP") which he contends caused both financial and emotional stress.  As part of his claim, Plaintiff was required to respond to statements from Defendants, which included a remark that Plaintiff had sought rehabilitation for alcohol abuse.  Plaintiff contends that this allegation, coupled with the other alleged incidents at work, resulted in his constructive discharged from his position.[2]  Plaintiff has not returned to work since March 18, 2009 and, according to his physician, he is unable to return to work for health reasons.  The present action followed.

### III. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted.  *See* FED. R. CIV. P.  12(b)(6).  When deciding a motion to dismiss for failure to state a claim, the court is required to accept as true all of the factual allegations in the complaint

---

[2] The amended complaint avers that Plaintiff Michael Ruddy's last day of work at the USPS was March 18, 2009.  It appears that he was on leave from his position from that date until some time in July, 2009, when he received the letter from OWCP dated July 16, 2009.  He alleges that this letter, coupled with other work-related circumstances, resulted in his constructive discharge from the position.

and all reasonable inferences that can be drawn therefrom.  <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847 (3d Cir. 2000) (citing <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)).  "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action."  <u>Id.</u>  The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002).

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Nami v. Fauver</u>, 82 F.3d 63, 66 (3d Cir. 1996).  First, the court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  <u>Innis v. Wilson</u>, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (*citing* <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft v. Iqbal</u>, — U.S. —, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.").  The court must then determine whether the complaint states a plausible claim for relief, which is a "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557-58 (2007)).

The Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "'plausible claim for relief.'" Id. at 210 (quoting Iqbal, 129 S. Ct. at 1950). That is, a complaint must do more than allege the entitlement to relief, its facts must show such an entitlement. Id. at 211.

## IV. Discussion [3]

### A.  Constitutional Claims

Defendants first maintain that Count I (free speech under §1981), II (equal

---

[3] Plaintiffs have agreed to the dismissal of all claims against the Defendants in their official capacities and have withdrawn their claim under the PHRA. Further, Plaintiffs concede that relief from the individual Defendants is unavailable under the ADEA and/or RA and thus agrees to dismiss his claims against them in Counts IV, V, VI, VII, and XI.

protection under §1983) and III (due process under §1983) should be dismissed as to all Defendants because neither §1981 nor §1983 provide a basis of relief in a claim asserted against a federal agency or its employees. *See* Brown v. General Services Administration, 425 U.S. 820, 835 (1976); Gissen v. Tackman, 537 F.2d 784, 786 (3d Cir.1976) (under Brown, federal employee barred from bringing employment discrimination claim under the Fifth and Fourteenth amendments as well as under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 against federal officials individually and in their official capacities).

Without disputing the unavailability of §1981 or §1983 to the present action, Plaintiffs contend that they raise these claims under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971),[4] which provides an avenue of redress for constitutional violations by federal officials.  In Bivens, the Supreme Court held that individuals whose constitutional rights are violated by federal officials may sue those officials for damages in their individual capacities. Although Bivens itself dealt only with Fourth Amendment violations, the Bivens doctrine has subsequently been extended to cases arising

---

[4] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 303 U.S. 388 (1971).  Bivens stands for the proposition that an individual has a cause of action for damages against a federal official, in his individual capacity, who, while acting under color of federal law, violates the civilian's constitutional rights.

under the Due Process Clause of the Fifth Amendment, *see* <u>Davis v. Passman</u>, 442

U.S. 228 (1979), as well as the First Amendment.  *See* <u>Paton v. La Prade</u>, 524 F.2d

862, 870 (3d Cir. 1975).  The <u>Bivens</u> Court cautioned, however, that such a

remedy should not be made available if there are "special factors counseling

hesitation in the absence of affirmative action by Congress," <u>Bivens</u>, 403 U.S. at

396, or if "Congress has provided an alternative remedy which it explicitly

declared to be a substitute for recovery directly under the constitution and viewed

as equally effective." <u>Carlson v. Green</u>, 446 U.S. 14, 19 (1980) (citing <u>Bivens</u>, 403

U.S. at 397)..  The reasoning in <u>Bivens</u> has been extended to hold that where

"claims arise out of an employment relationship that is governed by the

comprehensive procedural and substantive provisions [of the CSRA] giving

meaningful remedies against the United States," it is inappropriate for courts to

supplement that regulatory scheme with a new judicial remedy.  <u>Bush v. Lucas</u>,

462 U.S. 367, 368 (1983) (declining to create a <u>Bivens</u> action for money damages

for a federal employee when the claim could be redressed by way of the Civil

Service Reform Act of 1978 (CSRA)).

 Thus, to the extent Plaintiffs now attempt to convert these claims to ones

brought pursuant to <u>Bivens</u>, they ignore the limitations on such actions.  As noted

above, in the context of federal employment discrimination cases, <u>Bivens</u> is

8

unavailable given the preemptive statutory schemes available to address such claims.  *See* Purtill v. Harris, 658 F.2d 134, 137-38 (3d Cir.1981) (analyzing Bush and holding that "in light of the existence of ADEA remedies the [federal] employer-employee relationship ... is a special factor that counsels hesitation in recognizing a constitutional cause of action absent affirmative contrary indications from Congress."); Madden v. Runyon, 899 F. Supp. 217, 225 (E.D. Pa.1995) (stating that "the exclusive remedy for federal employment age discrimination is the ADEA" and barring plaintiff's Bivens claim that "merely mirrors his claims under ... the ADEA") (citing Purtill, 658 F.2d at 137).[5]

Because ADEA and RA provide the exclusive means for asserting his employment discrimination claims arising from his federal employment, the course of relief Plaintiffs presently seek is unavailable.  The federal statutory employment discrimination laws are the exclusive remedies for a federal employee, as long as the other claims are based on conduct covered by the statutes.  *See* Brown v. Gen. Services Admin., *supra* at 832-33, 835 (Title VII is the exclusive remedy for federal employees alleging job-related discrimination); Spence v. Straw, 54 F.3d 196, 202-03 (3d Cir.1995) (the RA is the exclusive means for challenging

---

[5]  Even if Bivens were available, a claim could only be stated against individual Defendants, not a governmental agency.  F.D.I.C. v. Meyer, 510 U.S. 471 (1994).

disability-related discrimination in the federal workplace, dismissing an equal-protection claim); <u>Stevenson v. U.S. Postal Service</u>, 316 F. Appx. 145 (3d Cir. 2009) (referencing the exclusivity of Title VII and the Rehabilitation Act for redressing discrimination in federal employment); <u>Taylor v. Garrett</u>, No. 90-2164, 1992 WL 245933, *5 (E.D. Pa. Sept. 11, 1992) (allegations that state a claim under the Rehabilitation Act are not cognizable under any other provision of federal law).

Plaintiffs maintain, however, that Counts I, II and III should be permitted to proceed, arguing that they fall outside of the scope of either the ADEA and the RA and that there is no other judicial relief available.  In support of this argument, they cite <u>Davis v. Passman</u>, 442 U.S. 228 (1978), for the proposition that <u>Bivens</u> may be an avenue of redress where other relief is unavailable to the plaintiff. However, <u>Davis</u> concerned a sex discrimination action where relief pursuant to Title VII was unavailable to plaintiff.[6]  *See* <u>Davis</u> at 247.  Inasmuch as Plaintiffs are not without other statutory avenues of relief, the <u>Davis</u> holding is distinguishable from the instant matter.  Indeed, as noted above, the ADEA and RA provide the exclusive remedy herein.  Contrary to Plaintiffs' position that

---

[6]  The applicable provision of Title VII was unavailable since the plaintiff, as a congressional employee, was not in the competitive service.  <u>Id</u>. at n.26.

Counts I, II and III are not covered by either the RA or the ADEA, an assertion upon which they have not elaborated, the facts alleged in these claims are contained within later counts of the amended complaint, brought under other statutes, where it is averred that Plaintiff's complaints and filing of grievances created a hostile work environment; that other employees were treated more favorably than Plaintiff; and that untrue and malicious statements made about Plaintiff by fellow employees caused his constructive discharge.  Consequently, Plaintiffs are not without recourse separate from a <u>Bivens</u> action.  Accordingly, because the substance of these claims are constitutional challenges to his federal employment, which are reiterated in subsequent counts pursuing relief under alternative theories, the present claims are untenable and must be dismissed.

Nonetheless, Plaintiffs argue that they may state a First Amendment claim asserting retaliation arising from Plaintiff's complaints and filing of grievances. Indeed, the Third Circuit has observed that a constitutional claim may not be barred if it "is not simply a disguised ... discrimination claim." <u>Spence v. Straw</u>, *supra* at 203 n.3.  Under <u>Bush,</u> a federal employee may not lodge a First Amendment claim for damages against a supervisor if Congress has created a remedial statutory framework for handling such claims.  <u>Bush v. Lucas</u>, *supra* at 390; <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423 (1988); <u>Purtill v. Harris</u>, *supra* at

11

137 ("[I]n light of available civil service remedies a federal employee has no cause of action for damages under the first amendment for retaliatory demotion."). The Civil Service Reform Act of 1978 ("CSRA"), Pub.L. 95-454, 92 Stat. 1111, provides such a structure. Bush, 462 U.S. at 390.  Hence, as noted above, if the CSRA provides a putative plaintiff with a remedy for a First Amendment violation that occurs during the course of employment, the employee may not maintain a separate Bivens action to vindicate the wrong. Wright v. Hadrick, 90 F. App'x 641, 642 (3d Cir.2004) ("[T]he CSRA provides the sole remedy for damage claims brought by federal employees who are subject to its protections.").  In the instant matter, however, it remains unclear whether Plaintiffs are provided a remedy for a First Amendment retaliation claim pursuant to such a statutory scheme.

Plaintiffs contend that the First Amendment claim is not based on the facts giving rise to his employment discrimination claims but instead arises out of the retaliation he experienced for complaining of such treatment and filing grievances on the same.  Although Count I of the complaint makes no mention of a retaliatory motive but references a hostile work environment, denial of equal protection and procedural due process, it is unclear, at this juncture of the proceedings, whether the substance of their First Amendment claim is also the basis of their employment discrimination claims.  Therefore, to the extent that this claim may be premised on

facts other than, and separate from, those supporting the employment discrimination claims, it may not be "governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States[,]"'Schweiker, 487 U.S. at 422 (quoting Bush, 462 U.S. at 368), and thus may proceed.

In summary, therefore, neither §1981 nor §1983 are available to Plaintiffs in this action.  Moreover, an attempt to convert Counts I, II and III into Bivens actions is precluded given the preemptive nature of the ADEA and RA.  To the extent Counts I, II and III assert constitutional challenges to federal employment, *to wit*, hostile work environment, equal protection and procedural due process claims, they should be dismissed as preempted by the ADEA and RA.  Finally, for purposes of a motion to dismiss, Plaintiffs have stated a First Amendment retaliation claim to the extent such a claim may neither be disguised as a discrimination claim nor be covered by a comprehensive statutory scheme such as the CSRA.

### B.  Employment Discrimination Claim

### 1.    Defendants USA and USPS

Although Plaintiffs have agreed to dismiss claims against the individual Defendants on the claims asserting employment discrimination, they do not

Case 3:09-cv-01984-ARC   Document 53   Filed 01/21/11   Page 14 of 39

concede dismissal of the USA and USPS as to such claims.  Defendants contend

that only the Postmaster General, not the USA or the USPS, is a proper party to a

cause of action under the ADEA.  They argue, therefore, that Counts IV, V, VI,

VII and XI should be dismissed against all parties other than the Postmaster

General.

Claims of age discrimination against the federal government are governed

by 29 U.S.C. § 633a. In contrast to Title VII, the ADEA does not state who should

be named as proper defendants.  However, given the fact that both Title VII and

the ADEA have been interpreted consistently with one another, courts have been

guided in the operation of one statute through the application of the other.  *See*

Honeycutt v. Long, 861 F.2d 1346, 1349 (5th Cir.1988) (holding that the

appropriate defendant to be sued under the ADEA is the same person as under

Title VII).  Therefore, in the absence of specific language on who is the proper

party for such a claim brought pursuant to the ADEA, a court may look to Title

VII for guidance and consistent application between the two statutes.  In doing so,

it is concluded that the proper defendant in an employment discrimination claim

brought by an employee of the USPS is the Postmaster General in his official

capacity, pursuant to 42 U.S.C. § 2000e-16(c).  The USA and USPS, therefore,

should be dismissed as Defendants to the claims asserted in Counts VI, V, VI, VII

and XI.

      2.    *Failure to exhaust administrative remedies*

Defendants next maintain that Plaintiffs' claims for discrimination based on both age (Count IV) and disability (Count V), hostile work environment (Counts VI and VII) and constructive discharge (Count XI) should be dismissed on grounds that causes of action were not administratively exhausted.  They allege that Plaintiffs failed to seek EEOC counseling or file an EEOC complaint in a timely manner.  Plaintiffs contend, however, that given the continuous violation theory, administrative remedies were timely pursued.

Prior to bringing a claim under Title VII or the RA, a plaintiff must file a timely charge of the alleged discrimination with the EEOC and exhaust administrative remedies. 42 U.S.C.2000e-5(f)(1); <u>Burgh v. Borough Council of Borough of Montrose</u>, 251 F.3d 465, 469 (3d Cir.2001); <u>Spence v. Straw</u>, *supra* at 200-01; <u>Ostapowicz v. Johnson Bronze Co.</u>, 541 F.2d 394, 398 (3d Cir.1976). The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir.1996). The administrative process involves the following:

      To begin the administrative procedures, an aggrieved person must

15

initiate contact with an EEOC Counselor within 45 days of the date of
"the matter alleged to be discriminatory, or, in the case of personnel
action, within 45 days of the effective date of the action." 29 C.F.R. §
1614.105(a). Unless the aggrieved person agrees to a longer
counseling period, the Counselor must conduct his final interview
within thirty days of the employee's initial request for counseling, and
inform the employee of the right to file a discrimination complaint. 29
C.F.R. § 1614.105(d). The employee must file their discrimination
complaint within 15 days of receipt of the notice. 29 C.F.R. §
1614.106(b). The agency has 180 days to investigate the EEO
Complaint; after which an employee can request either a hearing or an
immediate agency decision. 29 C.F.R. §§ 1614.106(e)(2)-1614.110. If
the aggrieved employee "fails to timely file her complaint within
applicable 45-day period, her discrimination claims are time-barred
and will be dismissed." Kim v. Potter, 474 F. Supp.2d 1175, 1185 (D.
Haw. 2007).

Green v. Potter, 687 F. Supp.2d 502, 513-14 (D.N.J. 2009).  This 45 day period for

contacting an EEOC counselor is subject to equitable tolling.  See Hart v. J.T.

Chemical Co., 598 F.2d 829, 831 (3d Cir.1979) (time limitations under Title VII

are not jurisdictional and more akin to statute of limitations and subject to

equitable tolling); Dixon v. Dalton, 985 F. Supp. 584, 586 (E.D. Pa.1997)

(specifically dealing with 45 day requirement).

　　　　Administrative exhaustion is not required under the ADEA.  A federal

employee has two options when pursuing an ADEA discrimination claim. He may

choose the administrative process by filing a charge with the EEOC. If the

employee is dissatisfied with the agency's disposition, he may then bring a civil

16

action in federal court. 29 U.S.C. § 633a(c). Alternatively, a federal employee may file suit in federal district court directly after giving the EEOC not less thirty days' notice of intent to sue before he files his action. 29 U.S.C. § 633a(d); Purtill v. Harris, *supra* at 138. The notice must be filed with the EEOC "within one hundred and eighty days [180] after the alleged unlawful practice occurred." 29 U.S.C. § 633a(d).

Plaintiff's amended complaint is devoid of information concerning administrative activity related to his discrimination claims.  Nevertheless, a failure to exhaust administrative remedies is an affirmative defense and the burden falls to Defendant to plead and prove that Plaintiff has not complied with the requisites of the administrative process.  Williams v. Runyon, 130 F.3d 568, 573 (3d Cir.1997). Although Defendants contend that Plaintiffs have failed to exhaust their administrative remedies by seeking EEOC counseling within 45 days of the alleged incidents, Plaintiffs argue that the ongoing and repeated nature of the employment discrimination permits them to asserts these claims under a "continuous violation" theory.  As a result, they maintain that the 45 day window began to run from the last alleged discriminatory incident, July 6, 2009, and that by seeking EEOC counseling on August 3, 2009, they have timely complied with the exhaustion requirement.

The continuing violation doctrine is "an 'equitable exception to the timely filing requirement' that applies 'when a defendant's conduct is part of a continuing practice.'" Shenkan v. Potter, 71 F. App'x 893, 894-95 (3d Cir.2003) (quoting Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir.2001)). Under the theory of continuing violations, "[a] plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir.1995) (citing Bronze Shields, Inc. v. N.J. Dep't of Civil Serv., 667 F.2d 1074, 1081 (3d Cir.1981); Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91 (3d Cir.1981)).

> To establish that a claim falls within the continuing violations theory, the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period.... Next, the plaintiff must establish that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern.

Id. at 754-55 (quoting Jewett, 653 F.2d at 91). The Third Circuit has stated that it finds consideration of the following non-exhaustive list of factors to be helpful: (1) subject matter-whether the violations constitute the same type of discrimination; (2) frequency; and (3) permanence-whether the nature of the

18

violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  Id. at 755 n. 9 (quoting Martin v. Nannie & Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir.1993) (citing, in turn, Berry v. Bd. of Supervisors of LSU, 715 F.2d 971, 981 (5th Cir.1983))); see Cowell, supra 292 (3d Cir.2001); Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir.1997).

"Once the plaintiff has alleged sufficient facts to support use of the continuing violation theory ..., the [] filing period becomes irrelevant-as long as at least one violation has occurred within that [applicable time period]." Id. at 755. "[D]iscrete discriminatory acts are not actionable if time barred, [however,] even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (emphasis added). Nevertheless, "the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." Cowell, 263 F.3d at 295.

Plaintiffs continuing violation theory has arguable merit based on the allegations of the amended complaint.  By averring that Plaintiff was the target of

repeated harassment, verbal assaults and interrogations of his every action is
sufficient to demonstrate an ongoing problem.  Consequently, for purposes of a
motion to dismiss, they have alleged sufficient facts to establish a continuing
violation theory, which provides equitable relief from the timely administrative
exhaustion of each instance of alleged discrimination.  The motion to dismiss
therefore should be denied with respect to the exhaustion of administrative
remedies on Plaintiffs' employment discrimination claims.[7]  Nonetheless,
Defendants also assert, alternatively, that these claims should be dismissed for
failing to state claims of employment discrimination.

   *3.     Disability discrimination*

   "The Rehabilitation Act expressly makes the standards set forth in the 1990
Americans with Disabilities Act ... applicable to federal employers[.]"  Wishkin v.
Potter, 476 F.3d 180, 184 (3d Cir.2007). To establish a prima facie case under the
Rehabilitation Act, a plaintiff must demonstrate that, at the time of the alleged
discriminatory actions, 1) he has a disability; 2) he is otherwise qualified to
perform the essential functions of the position, with or without accommodation;

---

   [7] Although this conclusion is reached when considering the employment
discrimination claims together, as will be discussed subsequently, equitable tolling
of the exhaustion requirements under a continuous violation theory is unavailable
to Plaintiffs' hostile work environment claims when this claim is analyzed
independent of the other claims.

and, 3) he was victim of an adverse employment action because of his disability. Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir.1996)..

At this stage in the proceedings, Plaintiffs are not required to go into the particulars about the life activity affected by his alleged disability or detail the nature of his substantial limitations.  However, Plaintiffs must, at a minimum, identify an impairment.  In Fowler, the Court of Appeals for the Third Circuit found a complaint sufficient when it set forth "how, when, and where [the defendant] allegedly discriminated against [the plaintiff]." Fowler, 578 F.3d at 212.  Defendants contend, and this court agrees, that Plaintiffs have failed to identify exactly what Michael Ruddy's physical or mental impairment is, and whether such an impairment is actual or perceived.  Symptoms of his impairment or the limitations of such a condition, without the identification of the disability, fail to satisfy the leading requirements articulated above.  Moreover, the amended complaint also does not allege the second element of a prima facie case of disability discrimination under the RA–that Plaintiff was qualified to perform the essential functions of the position.  While Plaintiffs may argue that this is an inference that can be drawn from his long work history in that job, such an argument fails to recognize the affirmative pleading requirements under the RA. Consequently, the amended complaint fails to state a prima facie case of disability

21

discrimination and, accordingly, it should be dismissed without prejudice.

    4.    *Age discrimination*

       Title VII prohibits discrimination against an individual on the basis of that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2. Age is not a proscribed basis for discrimination under Title VII. Id.  The ADEA, however, is the legislatively enacted provision that prohibits discrimination on the basis of an individual's age and it mirrors Title VII in its substantive provisions. *See e.g.*, Ahlmeyer v. Nevada System of High Ed., 555 F.3d 1051, 1058 (9th Cir. 2009) ("Title VII of the Civil Rights Act of 1964 provides an avenue for plaintiffs to assert claims for employment discrimination based on 'race, color, religion, sex or national origin ... In its substantive provisions, the ADEA mirrors Title VII....").

       To demonstrate a prima facie case of age discrimination, the plaintiff has the burden to show that: 1) he is forty years of age or older; 2) he suffered from an adverse employment decision; 3) he was qualified for the position in question; and, 4) the employer gave more favorable treatment to an employee who is sufficiently younger to permit an inference of age discrimination. Grove v. Admiral Peary Area Vocational-Technical School, 221 F. Appx. 101, 104 (3d Cir. Feb. 23, 2007) (citing Tomasso v. Boeing Co., 445 F.3d 702, 706 n. 4 (3d Cir.2006)).  Plaintiff Michael Ruddy appears to have put forth allegations to

establish the first three (3) elements of a prima facie case under the ADEA.[8]

While they have submitted that he was replaced with a younger individual, they

have do so in conclusory fashion and have not identified the individual, his age or

his position.  Plaintiffs have not proffered any facts or even allegations related to

his age nor have they described how Defendants' conduct was age-based.  Rather,

in general terms they have alleged that the treatment of Michael Ruddy was

discriminatory based on his age because other, younger postal workers were

treated differently and/or more favorably.  For purposes of a motion to dismiss,

conclusions such as these cannot be considered under <u>Fowler</u>.  The amended

complaint fails to satisfy the standards set forth in <u>Twombly</u> and <u>Iqbal</u> as to this

claim and precludes a conclusion that they have a plausible claim for relief under

the ADEA.

> 5.    *Hostile work environment*

Courts in this Circuit have recognized a plaintiff's right to assert a hostile

work environment claim under Title VII, the Rehabilitation Act and the ADEA.

*See* <u>Miller v. Cohen</u>, 52 F. Supp.2d 389, 400 (M.D. Pa.1998) *aff'd*, 185 F.3d 862

(3rd Cir.1999); <u>Aman v. Cort Furniture Rental Corp.</u>*, 85 F.3d 1074, 1081 (3d*

---

[8]  Although the action is taken by the employee, constructive discharge can qualify as an adverse employment decision given its involuntary nature.  See <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 974 (3d Cir.1998).

*Cir.1996);* Fries v. Metro. Mgmt. Corp., 293 F. Supp.2d 498, 504 (E.D. Pa.2003)
*aff'd* Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506 (3d Cir.2004).  "Hostile
environment claims are different in kind from discrete acts.  Their very nature
involves repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, *supra* at 115.
In order to state a claim for hostile work environment, a plaintiff must prove five
elements: (1) the plaintiff suffered intentional discrimination because of his
disability, gender, or age; (2) the discrimination was pervasive and regular; (3) the
discrimination detrimentally affected plaintiff; (4) the discrimination would have
detrimentally affected a reasonable person of the same protected class in that
position; and (5) the existence of respondeat superior liability. Cardenas v.
Massey, 269 F.3d 251, 260 (3d Cir.2001). "[H]arassment is pervasive when
'incidents of harassment occur either in concert or with regularity.'" Andrews v.
City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990) (quoting Lopez v. S.B.
Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir.1987)).

       To determine whether discrimination is sufficiently hostile to create
employer liability, a reviewing court must look at the totality of the circumstances,
including factors such as "the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating, or a mere offensive
utterance; whether it unreasonably interferes with an employee's work

performance." <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 426 (3d Cir.2001) (citing

<u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)). "[O]ffhanded comments and

isolated incidents (unless extremely serious) are not sufficient to sustain a hostile

work environment claim.  Rather, the conduct must be extreme to amount to a

change in the terms and conditions of employment." <u>Mufti v. Aarsand & Co., Inc.</u>,

667 F. Supp.2d 535, 545 (W.D. Pa.2009) (citing <u>Abramson v. William Paterson</u>

<u>College of New Jersey</u>, 260 F.3d 265 (3d Cir.2001)). Even conduct that is

unquestionably offensive and rude will not rise to the level required to make out a

hostile work environment claim unless it is sufficiently severe. *See* <u>Saidu-Kamara</u>

<u>v. Parkway Corp.</u>, 155 F. Supp.2d 436, 439-440 (E.D. Pa.2001) (finding that

defendant's repeated making of suggestive sexual comments, patting plaintiff on

the buttocks and breast, and making harassing comments about plaintiff's family

background and poverty were not sufficient to state a claim for hostile work

environment). Rather, the conduct must be objectively severe and serious.

Plaintiffs' hostile work environment claim alleges that Michael Ruddy was

harassed because of his membership in a protected class.  Although largely

conclusory, these allegations that the harassment he allegedly suffered was based

on his disability or age also suggest a basis for such treatment in his work

performance.  However, for purposes of a motion to dismiss, sufficient allegations

25

have been made to state a claim for a hostile work environment.

Nonetheless, in examining the hostile work environment claims apart from the other employment discrimination claims, Defendants contend that Plaintiffs' hostile work environment claims cannot be predicated on the letter he received on July 16, 2009 from the DOL, which he asserts prompted his involuntary retirement. Inasmuch as he was not working for the USPS at that time, they argue that it could not interfere with his work performance. *See* Lennon v. Unumprovident Corp., No. 1:06-CV-257, 2008 WL 112050, *5 (E.D. Tenn. Jan. 8, 2008) (finding hostile work environment claim untimely when continuing violation occurred at time when plaintiff was no longer working). To establish that the discriminatory treatment interfered with his work, Plaintiff must allege facts occurring no later than March 18, 2009, his last day of work at the USPS. Consequently, Plaintiff cannot assert a hostile working environment claim arising from facts occurring after March 18, 2009, his last day of work at the USPS.

All hostile work environment claims, therefore, were required to be raised through the EEOC administrative process either within 45 days of March 18, 2009 (for a claim under the RA) or within 180 days of his last day of work (for a claim under the ADEA). It therefore appears that the continuous violation theory, which prevented dismissal of his employment discrimination claims due to administrative

exhaustion issues, cannot be applied to any claims for hostile work environment after March 18, 2009. Having failed to timely pursue either process of administrative exhaustion with the EEOC, the present claims for hostile work environment appear untimely. Consequently, Counts VI and VII should be dismissed both for failure to state a claim and for being untimely raised.

### 6. *Constructive discharge*

Courts reviewing constructive discharge claims must employ an objective standard, and ask whether "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir.1993). "To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Id (internal quotation and citation omitted). "An employee is protected from a calculated effort to pressure her into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by her co-workers." Gray v. York Newspapers, 957 F.2d 1070, 1083 (3d Cir.1992) (internal citations omitted). Additionally, the employer must "knowingly" permit these conditions. Id. at 1082 (internal citations omitted).

Plaintiffs allege that the cumulation of his treatment by the Defendants, his physical and/or mental health and the letter he received from the Department of Labor on his OWCP claim, in which it was alleged that he was in rehabilitation for alcohol use, forced Michael Ruddy to retire from his position with the USPS. Shortly thereafter, Plaintiffs' EEOC filing was made on August 3, 2009.  Although the briefs offer little in the way of a detailed analysis of this claim, it appears, for purposes of the present motion, that Plaintiffs have set forth facts demonstrating the continuous unpleasant working conditions, harassment and assaultive remarks, coupled with a letter from his supervisors indicating substance abuse problem, which may be unfounded, could lead a reasonable person to resign.  Whether a reasonable person in the his position would have felt compelled to resign based on the alleged intolerable of his working conditions is a question of fact not presented on a motion to dismiss.  Because it is arguable that such a finding could be made, the motion to dismiss should be denied on this claim.

### C. Tort Claims

### 1.    Proper parties

Defendants note that although the tort claims are asserted against all Defendants, the proper party to a claim under the FTCA is exclusively the United States.  Although Plaintiffs do not contest this claim, they also do not explicitly

concede that all other Defendants except the USA are improper parties.

Defendants' position is well-taken– the USA is the only proper defendant in an

FTCA suit.  *See* Sash v. Hogsten, No. 1:07-CV-475, 2008 WL 618945 (M.D. Pa.

March 5, 2008).  Accordingly, the dismissal of all other Defendants as parties in

Counts X, XII, XIII and XIV is warranted.

     *2.    Subject matter jurisdiction*

    Federal jurisdiction over a civil action against the United States for money

damages for injury to person or property is established by the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*  The FTCA does not permit the

commencement of a civil lawsuit "unless the claimant shall have first presented

the claim to the appropriate Federal agency and his claim shall have been finally

denied by the agency in writing and sent by certified or registered mail." 28 U.S.C.

§ 2675(a).[9]  This is a jurisdictional requirement and cannot be waived. Livera v.

---

[9]  Section 2675(a) provides in relevant part:
An action shall not be instituted upon a claim against the United States for
money damages for injury or loss of property or personal injury or death
caused by the negligent or wrongful act or omission of any employee of the
Government while acting within the scope of his office or employment,
unless the claimant shall have first presented the claim to the appropriate
Federal agency and his claim shall have been finally denied by the agency in
writing and sent by certified or registered mail. The failure of an agency to
make final disposition of a claim within six months after it is filed shall, at
the option of the claimant any time thereafter, be deemed a final denial of
                                                                (continued...)

First Nat'l State Bank of N.J., 879 F.2d 1186, 1194 (3d Cir.1989). Because the

FTCA is a limited waiver of sovereign immunity, its requirements are strictly

construed.  Id.

Defendants contend that because Plaintiffs failed to seek administrative

remedies with the USPS, the court lacks jurisdiction over their tort claims, *to wit*,

Counts X (libel and slander); XII (invasion of privacy); XIII (intentional infliction

of emotional distress) and XIV (loss of consortium).  Plaintiffs submit that the

USPS was placed on notice of the tort claims by the Office of Workers

Compensation Program ("OWCP") claim they filed.  Accordingly, the court must

determine whether the filing of a claim with the OWCP is sufficient, for

exhaustion purposes, to pursue tort claim in federal court.  To resolve this issue, a

brief background of federal workers' compensation is helpful.

---

[9](...continued)
the claim for purposes of this section.

Congress enacted the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq*., to provide an exclusive and comprehensive worker's compensation scheme to federal employees for injuries that are "sustained while in the performance of [their] duty." 5 U.S.C. § 8102(a). The FECA is a federal employee's exclusive remedy for on-the-job injuries. 5 U.S.C. § 8116(c). The FECA was designed to protect the Government from suits under statutes, such as the FTCA, that had been enacted to waive the Government's sovereign immunity.  Section 8116(c) thus bars an employee who has collected benefits under FECA from subsequently bringing suit against his or her employer for damages under the FTCA.

The Secretary of Labor has the authority to administer and decide all questions arising under FECA, see 5 U.S.C. § 8145, and to prescribe rules and regulations necessary for the administration and enforcement of the Act, see id. at § 8149. The Secretary of Labor has delegated this authority to the Director of the OWCP, who is responsible for the administration and implementation of FECA. 20 C.F.R. § 10.1.  If the OWCP determines–and the Secretary confirms–that a disability resulted from a work-related injury as defined by the FECA, a claimant is limited to the remedies authorized by the FECA, even if a particular type of damage or consequence the claimant suffered is not compensable under the FECA.

Id.  Only where the Secretary finds that no FECA coverage of a federal employee's injury exists may that employee proceed with an action against the government under the FTCA. In all cases, however, a final coverage determination by the Secretary is necessary before an employee's FTCA claim may proceed.[10]

Because the FTCA provides that a lawsuit may not be brought against the United States unless the plaintiff has first exhausted all available administrative remedies, before filing a suit the plaintiff must first present a claim to the appropriate federal agency and the federal agency must deny the claim. 28 U.S.C. § 2675(a).  A claim is deemed presented at an agency when a Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain, is executed and presented to the appropriate federal agency. 28 C.F.R. § 14.2. This administrative claim requirement is a jurisdictional prerequisite and is not waivable. United States v. Kubrick, 444 U.S. 111, 117-18 (1979).

While the submission of a Form 95 is not the exclusive means of exhaustion of remedies prior to filing FTCA claims in federal court, as noted above, presentment of a claim to the appropriate federal agency is required.  28 U.S.C. §

---

[10]  The final determination of Plaintiffs' OWCP claim is unclear from the pleadings.

2675(a).  Defendants contend that the submission of the OWCP claim to the

Department of Labor fails to comply with the requirements of 28 U.S.C. § 2675(a)

because Plaintiffs' tort claims have not been presented to the appropriate federal

agency, the USPS.  The court agrees.  While Plaintiffs may have identified their

tort claims in the OWCP action, this means is not sufficient to place the USPS on

notice of such claims nor to commence, much less satisfy, the procedural

requirements relating to exhaustion under the FTCA.  *See* In re Consolidated U.S.

Atmospheric Testing Litigation, 820 F.2d 982 (9th Cir. 1987), *cert. denied* 485

U.S. 905 (medical malpractice claim against Government by widow of former

serviceman who had been ordered to participate in military exercises near two

atmospheric nuclear test sites, was barred for failure to state sufficient claim to

appropriate federal agency, where widow's administrative claim was filed with

Department of Energy, but Department of Defense, which controlled medical

facility where her husband received treatment, received no notice); Cronauer v.

U.S., 394 F. Supp.2d 93 (D.C. Cir. 2005) (court lacked subject matter jurisdiction

over FTCA claim arising from burn injuries to children caused by steam

emanating from a manhole in District of Columbia where parents, who filed claims

with Department of Justice (DOJ) rather than General Services Administration

(GSA), failed to timely file their claims with the appropriate government agency

prior to filing suit).  Accordingly, in failing to present the tort claims they now

seek to pursue to the USPS, such claims are rendered administratively

unexhausted for purposed of the FTCA.  As noted above, the failure to exhaust

their administrative remedies on such claims renders this court without jurisdiction

and precludes their consideration.[11] [12] *See* <u>Best Bearings Co. v. U.S.</u>, 463 F .2d

---

[11]   Nor can it reasonably be argued that Plaintiffs sent the claim to the wrong federal agency inasmuch as the OWCP is the correct entity to address Plaintiffs workers compensation claims.  Consequently, being the proper recipient of the claim, it is difficult to assert that OWCP was under an obligation to transfer Plaintiffs' submissions to the USPS for exhaustion purposes under the FTCA. *See* <u>Motor Ave. Co. v. Liberty Indus. Finishing Corp.</u>, 885 F. Supp. 410 (E.D.N.Y. 1994) (fact that landowners sent letter and complaint to Department of Justice rather than to General Services Administration did not render letter ineffective as notice of claim required under Federal Tort Claims Act (FTCA), in light of regulation requiring agency that received claim to transfer it to appropriate agency).

[12]   Even assuming, *arguendo*, that Plaintiffs had properly pursued administrative remedies with the USPS for the tort claims they now bring, and thereby satisfying the administrative prerequisites under the FTCA, it appears that they have failed to state a claim for both libel and slander (Count X) and intentional infliction of emotional distress (Count XIII). "Claims stemming from intentional torts generally are excluded from the Government's waiver of sovereign immunity under 28 U.S.C. § 2680(h)." <u>CNA v. United States</u>, 535 F.3d 132, 148 (3d Cir.2008). Specifically, that section provides that the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). While intentional infliction of emotional distress is not listed in § 2680(h), courts have found such a claim barred by § 2680(h), where the claim "arises out of" or is based on conduct enumerated in that section. *See, e.g.*, <u>Gay v.</u>

(continued...)

1177, 1179 (7th Cir.1972), *abrogated on other grounds* (plaintiff's failure to file an appropriate administrative claim deprives this court of jurisdiction over a civil claim for money damages against the USPS).   Consequently, Counts IV, V, VI, VII and XI should be dismissed for failure to exhaust administrative remedies.

## D. Conspiracy

Defendants next maintain that Plaintiffs have failed to state a claim for conspiracy (Count IX).  In order to make out a prima facie case for a civil claim of conspiracy, a complaint must allege "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. 2000) (citing McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Super. 1988)). Pennsylvania courts also require an element (4): "[p]roof of malice, an intent to injure." Petula v. Mellody, 588 A.2d 103, 107

---

[12](...continued)
Garvey, No. 03-CV-01485, 2004 WL 2203730, at *1 n. 3 (E.D. Pa. Sept.30, 2004); Borawski v. Henderson, 265 F. Supp.2d 475, 484 (D.N.J.2003); Prybyszewski v. City of Philadelphia, No. 89-7024, 1990 WL 2800, at *3 (E.D. Pa. Jan.16, 1990).  In the instant matter, the intentional infliction of emotional distress is based on the alleged libel and slander by Plaintiff's co-workers.  As such, it is conduct specifically excluded from the FTCA's waiver of sovereign immunity and, consequently, not actionable herein.

(Pa. Commw. 1991) (citing <u>Thompson Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 472 (Pa. 1979)). A civil conspiracy claim requires an underlying cause of action–that is, the purpose of the conspiracy–in order to proceed. <u>McKeeman</u>, 751 A.2d at 660 (citing <u>Pelagatti v. Cohen</u>, 536 A.2d 1337, 1342 (Pa. Super. 1987)).

Although brought against all Defendants, Plaintiffs' conspiracy claim specifically mentions only Defendants USPS, Dickson, Shaw, Tucker and Passarelli.  The claim alleges that Dickson, Shall, Tucker and Passarelli discussed efforts to "force the Plaintiff to case [sic] faster and leave the office earlier;" that USPS, Shall, Tucker and Passarelli conspired to deny Plaintiff union representation and that they "acted in concert with each other when allowing Plaintiff to use the telephone;" and that Shall, Tucker and Passarelli, along with the USPS, acted jointly and discussed whether Plaintiff should be paged.  (Doc. 15, ¶¶ 186-189). Plaintiffs further allege that the individual Defendants conspired to publish false and outrageous statements about Plaintiff Michael Ruddy.  (<u>Id</u>. at ¶ 191).  Aside from this general statement about a conspiracy, this claim makes no reference to other Defendants, *to wit.*, USA, Potter, Pugliese, Bansa and Shope or their alleged role in the alleged conspiracy.  It appears therefore that Count IX fails to state a claim with respect to these Defendants.

36

As to the sufficiency of the pleading at Count IX, this court has observed that "it is a longstanding rule in the Third Circuit that a mere general allegation ... or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim." Warren v. Luzerne County, No. 3:09-CV-946, 2010 WL 3024859, *7 (M.D. Pa. July 29, 2010) (quoting Deangelo v. Brady, 185 F. App'x 173, 175 (3d Cir.2006) (quotation and alteration omitted). "In Twombly, the Supreme Court held that general allegations of conspiracy are not sufficient." Id. (quoting St. Clair v. Citizens Fin. Group, 340 F. App'x 62, 65 (3d Cir.2009) (citing, in turn, Twombly, 550 U.S. at 555). A conspiracy requires a "meeting of the minds." Adickes v. S.H. Kress & Co., 398 U.S. 133, 158 (1970)). The summation of Count IX is that the Defendants met with each and discussed the Plaintiff Michael Ruddy. "This meager factual basis . . . falls short of the pleading requirements set forth under Iqbal and Twombly." Warren, supra. Without more factual averments, this is insufficient to state a claim for conspiracy. Therefore, Plaintiffs' claim at Count IX should be dismissed without prejudice.

### E.  Remaining Issues

Finally, Defendants have raised several issues for dismissal to which Plaintiffs have not responded and, consequently, are deemed not to oppose. The

issues included striking Plaintiffs' claim for punitive damages in Counts IV, VII and XI inasmuch as they are unavailable against the federal government or its agencies, and striking Plaintiffs' demand for a jury trial, compensatory and liquidated damages in Count V.[13] Finding the arguments advanced by the Defendants well-reasoned and legally sound, these remaining issues should be accepted and the amended complaint should be tailored accordingly. *See* 42 U.S.C. 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)[.]"); <u>Baldwin v. Peake</u>, No. 08-1352, 2009 WL 1911040 (W.D. Pa. July 1, 2009) (finding that the ADEA provides no right to a jury trial, compensatory or liquidated damages in actions against the federal government).

## V. Recommendation

Based on the foregoing, it is respectfully recommended that Defendants' Motion to Dismiss (Doc. 26) be granted in part and denied in part as follows:

---

[13] Additionally, the Defendants have raised the following issues to which Plaintiffs have not responded, but which are moot in light of the foregoing analysis: striking Plaintiffs' demand for punitive damages in Counts X, XII, XIII and XIV; dismissal of all defendants except the USA in Plaintiffs' tort claims, *to wit.*, Counts X, XII, XIII and XIV; dismissal of Plaintiffs' claims for libel and slander inasmuch as they are prohibited under the FTCA; and dismissal of Plaintiffs' claim for invasion of privacy in Count XII for failure to state a claim.

1.      The Motion to Dismiss Count I be denied to the extent Count I raises a First Amendment retaliation claim.

2.      The Motion to Dismiss Counts II and III be granted and Counts II and III be dismissed for failure to state a claim.

3.      The Motion to Dismiss Counts IV and V be granted and Counts IV and V be dismissed without prejudice.

4.      The Motion to Dismiss Counts VI and VII be granted and that Counts VI and VII be dismissed.

5.      The Motion to Dismiss be denied as to Count XI against Defendant Potter, and be granted with respect to all other Defendants.

6.      The Motion to Dismiss Count VIII be granted and that Count VIII be dismissed based on Plaintiffs' withdrawl of the claim.

7.      The Motion to Dismiss Count IX be granted and Count IX be dismissed without prejudice to Plaintiffs.

8.      The Motion to Dismiss Counts X, XII, XIII and XIV be granted and Counts X, XII, XIII and XIV be dismissed for failure to exhaust administrative remedies.

Date: January 21, 2011                    s/ William T. Prince
                                          William T. Prince
                                          United States Magistrate Judge